IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALFONZO NALLS | CRIMINAL ACTION FILE NO.<br><br>1:16-CR-427-AT-JKL-13 |

**NON-FINAL REPORT AND RECOMMENDATION**

This criminal case is before the Court on Defendant Alfonzo Nalls's Preliminary Motion to Suppress and for Further Relief [Doc. 375] and his First Amended Motion to Suppress (Electronic Searches) [Doc. 642]. The government has filed a response [Doc. 802], and Nalls has filed a reply [Doc. 837]. For the following reasons, it is **RECOMMENDED** that the motions be **DENIED**.

**I.   PRELIMINARY MATTERS**

As a preliminary matter, the Court addresses the scope of the issues that are ripe for consideration. Nalls is charged in this case with Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy, 18 U.S.C. §§ 1962(d), 1963(a) (Count 1), arising out of his alleged membership in the Nine Trey Gangsters, an alleged criminal street gang, as well as Violent Crimes in Aid of Racketeering Activity ("VICAR") conspiracy to commit murder, 18 U.S.C. § 1959(a)(5) (Count

7).  [Doc. 33 (Superseding Indictment).]  On December 1, 2017, Nalls filed an omnibus preliminary motion to suppress, which the Court twice directed him to perfect.  [*See* Docs. 375, 378, 537 at 3.]  Nalls filed an amended motion on August 15, 2018, in which he primarily argued for the suppression of all evidence that the government seized pursuant to a warrant authorizing the use of a cell-site simulator (the "Cell-Site Simulator Warrant") and a warrant to search a Samsung cell phone (the "Cell Phone Warrant").  [Doc. 642 at 1-10.]  In the amended motion, Nalls also moved to suppress custodial statements, writing that he:

> reiterates his request . . . that the Court suppress at trial any statement made by him during any custodial interrogation of him by law enforcement officers (federal or state/local) during any time involved in or relevant to this case, as well as any evidence obtained by such law enforcement agents during or as a result of any search or seizure during or flowing in any way from such interrogation or custody. However, Mr. Nalls will now further amend his preliminary Motion to Suppress by stating this latter request for suppression as a separate motion from the present motion requesting suppression of the electronic searches discussed in this First Amended Motion to Suppress.

[*Id.* at 11.]  At a pretrial conference on September 20, 2018, the Court directed Nalls to supplement his motion to suppress statements on or before October 4, 2018. [Doc. 725 at 2.]  Nalls, however, did not do so.  Therefore, to the extent that Nalls's pending motions to suppress seek to suppress statements, the Court **RECOMMENDS** that the motion be **DENIED** as withdrawn or abandoned.  *See*

2

*United States v. Richardson*, 764 F.2d 1514, 1526-27 (11th Cir. 1985) ("A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented," and thus, a "trial court may refuse a defendant's . . . motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief."); *see also United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000); *United States v. Craig*, No. 1:16-CR-145-TWT-JKL, 2017 WL 10410307, at *4 (N.D. Ga. Oct. 26, 2017) (recommending denial of motion to suppress that contained only conclusory allegations and general assertions), *report and recommendation adopted*, 2018 WL 5016501 (N.D. Ga. Oct. 16, 2018); *United States v. Chavez-Maciel*, No. 1:10-CR-00490-TCB-LTW, 2012 WL 6742323, at *20 (N.D. Ga. Dec. 7, 2012) (recommending denial of motion to suppress that defendant failed to perfect upon court order), *report and recommendation adopted*, 2012 WL 6738771 (N.D. Ga. Dec. 31, 2012).

The Court therefore focuses its analysis on whether evidence that the government seized pursuant to the Cell-Site Simulator Warrant and the Cell Phone Warrant should be suppressed.

## II. SUMMARY OF THE WARRANTS AT ISSUE

### A. The Cell-Site Simulator Warrant

On October 13, 2017, FBI Special Agent Jason Cleary applied for and obtained a search warrant from United States Magistrate Judge Alan J. Baverman authorizing law enforcement officers to use a "cell-site simulator" to determine the location of a cellular device that law enforcement believed Nalls was using.[1] [Doc. 802-1 (application)[2]; Doc. 802-2 (search warrant and pen register order).] SA

---

[1] A cell-site simulator is an electronic investigative device that mimics the function of a cellular tower, broadcasting signals to and receiving signals from a cellular device. Based on pings that the simulator receives from the device, law enforcement can determine the device's location.

[2] Nalls attached to his motion the correct face page for the application, [*see* Doc. 642 at 17]; however, he did not attach a copy of SA Cleary's affidavit. Instead, he attached an application for pen registers, trap and trace devices, and cell site data for a different target device. [*See* Doc. 642 at 18-30.] The government has attached the corrected applications materials to its response, [*see* Doc. 802-1], and explains that Nalls's misunderstanding appears to be due to the government's error in Bates-labeling the discovery in this case, which created the misimpression that the application for the cell-site simulator was supported by an application for a pen register, trap and trace devices, and cell site data for a wholly different device [*see* Doc. 802 at 2]. In his reply, Nalls does not contest the government's explanation, [*see* Doc. 837], and in his amended motion, Nalls explicitly anticipates that there may have been an error in the government's production [Doc. 642 at 7]. Since Nalls does not quarrel with the government's explanation, the Court is satisfied that the materials attached to the government's response at Doc. 802-1 are the materials that Judge Baverman considered when he issued the warrant; therefore, the Court refers to those materials in the analysis that follows.

Cleary summarized the basis for probable cause over the span of eighteen paragraphs. (*See* Aff. of Jason L. Cleary [Doc. 802-1 at 2-12] ¶¶ 12-29.) He stated that the FBI was conducting a criminal investigation involving Nalls and other members the Nine Trey Gangsters, a violent street gang. (*Id.* ¶¶ 12-13.) He explained that Nalls was intercepted using a previous device on court-authorized wiretaps of three other alleged high-ranking targets of the investigation, co-defendants Tyrone Clark, Khajavius Mitchell, and Joseph Riley. (*Id.* ¶¶ 14-17.) According to SA Clearly, on all three interceptions, Nalls is heard discussing "gang personnel, logistics, policy, and other activities and business." (*Id.* ¶ 17.) Nalls was also "intercepted actively engag[ing] in the acquisition, possession, and distribution of multiple drugs and controlled substances to include promethazine with codeine and crack cocaine." (*Id.*) SA Cleary gave the following four specific examples:

> a. On September 8, 2016 NALLS was intercepted telling Clark that he was in possession of "purp" (short for purple, a street name for promethazine codeine) and "crack."
>
> b. On September 10, 2076, NALLS and Mitchell were intercepted discussing the status of various [Nine Trey Gangsters] members.
>
> c. On September 25, 2016 after the arrest of Mitchell and another [Nine Trey Gangsters] member, NALLS and Clark conspired to remove all of Mitchell's drugs from the residence utilized by

> Mitchell and NALLS to distribute drugs, in efforts to deter a possible law enforcement investigation of the residence.
>
> d. On November 11, 2016 NALLS was intercepted discussing with Riley, his (NALLS') status for an upcoming gang meeting.

(*Id.* ¶ 17(a)-(d).)

SA Cleary also stated that agents learned through the court-ordered interceptions that on September 24, 2016, drug money was allegedly stolen from co-defendant Mitchell's apartment. (Cleary Aff. ¶ 18.) Mitchell determined that fellow gang member, Yahsell Gable, was responsible for the theft, and the following day, decided to "confront and kill Gable." Law enforcement learned of Michell's alleged intent, and interdicted Michell and another alleged gang member en route to kill Gable. Mitchell and the other alleged gang member were found in possession of firearms and arrested by Atlanta Police Department ("APD") officers. (*Id.*)

SA Cleary also stated that on September 26, 2016, co-defendant Tashied Reed went to a rival gang member's house in a further attempt to recover Mitchell's stolen money. (Cleary Aff. ¶ 18.) In an intercepted call, Reed stated that he was unable to recover the money and that the occupants of the house had pointed guns at him. In a later intercepted call, Reed told Clark "Ain't no n**** never draw down [point firearms] on me didn't get kilt bro." (*Id.*) Clark, Riley, and co-

6

defendant Michael Jackson allegedly organized Nine Trey Gangsters members with assault rifles to respond to Reed's location and assist him.  (*Id.* ¶ 19.)  In one intercepted call, Nalls was identified as one of the gang members who was to assist Reed.  Surveillance showed a suspected gang member drive to an apartment where Nalls was located and Nalls was observed exiting the apartment with an object, later determined to be an assault rifle, which he placed into the passenger side of the vehicle.  The vehicle then travelled to the location of the intended crime; however, APD intercepted the vehicle and a second vehicle traveling with it.  Inside the vehicle in which Nalls had placed the assault rifle, agents found the assault rifle on the passenger side floorboard.  An assault rifle was also recovered from the trunk of the other vehicle.  Six individuals traveling in the cars were arrested by APD, including Reed. (*Id.*)  Agents seized a cell phone from Reed in connection with the arrest.  (*Id.* ¶ 20.)  A subsequent search of the phone pursuant to a search warrant revealed that on September 26, 2016, shortly before APD stopped the two vehicles, Nalls called Reed and engaged in four-minute conversation.  (*Id.*)

SA Cleary also related that a week later, on October 3, 2016, Nalls and Clark were intercepted on a wiretap discussing the recent arrests of suspected Nine Trey Gangsters members.  (Cleary Aff. ¶ 21.)  Nalls allegedly told Clark that he had

7

changed his behavior, out of concern that law enforcement was investigating him, that he had been in Douglasville, Georgia, for a week, that he was turning his phone off, and that he had bought a second "minute phone." Nalls also allegedly stated that he had not been able to "work" (that is, sell drugs) since the arrests, and stressed to Clark that he and other Nine Trey Gangsters members should not discuss gang or criminal activity over the phone. (*Id.*)

SA Cleary additionally related that in spring 2017, Nalls was recorded on the Fulton County Jail telephone system speaking with fellow Nine Trey Gangsters member, Demario Baker. (Cleary Aff. ¶ 22.) Allegedly, during the call Baker used Nine Trey Gangsters lingo, and Nalls, "remaining law enforcement conscious, chastised him to not 'be banging on the phone,' referring to the recorded jail call." (*Id.*)

In September 2017, Nalls, who was then on probation, reported to a Georgia Department of Community Supervision Officer that his cell phone number was 470-316-0638, the target device. (Cleary Aff. ¶ 24.) Later in September 2017, Nalls used the target device to call and speak with the Department of Community Supervision. (*Id.*) Nalls also reported to his probation officer that his mailing

address was his sister's residence at an apartment complex in Atlanta, and "that he spends each night at a different associate's residence." (*Id.* ¶ 25.)

Toll records for the target device indicated that Nalls was in communication with two other suspected Nine Trey Gangsters members on September 28, 2017. (Cleary Aff. ¶ 26.) SA Cleary also stated that data from a pen register/trap and trace on the number associated with the target device indicated that it was in the area of large apartment complexes and that Nalls "has routinely, but without pattern or regularity, split time between two distinct areas." (*Id.* ¶ 27.)

Finally, SA Cleary relayed that Nalls had been indicted on charges of RICO conspiracy and VICAR murder conspiracy on October 12, 2017. (Cleary Aff. ¶ 28.)

### B.     The Cell Phone Warrant

On November 7, 2017, the undersigned issued a search warrant authorizing the search of a Samsung cell phone that agents seized from Nalls during his arrest. [Doc. 642 at 32.] Nalls has provided the Court with only a portion of SA Cleary's affidavit in support of the warrant application that describes Nalls's alleged involvement. The affidavit is largely repetitive of the information contained in SA

Cleary's affidavit supporting the cell-site simulator warrant. [Doc. 642 at 38-40.[3]] Specifically, SA Cleary wrote that Nalls "is a low-level member of the Fire Line" (presumably a subset of alleged Nine Trey Gangsters members) and that Nalls had been intercepted (when he was using a previous telephone number) on court-authorized wiretaps "discussing gang personnel, logistics, policy, and other activities and business" and "actively engag[ing] in the acquisition, possession, and distribution of multiple drugs and controlled substances to include promethazine with codeine and crack cocaine." [*Id.* at 38.] Similar to the application for the cell-site simulator, SA Cleary wrote that on September 8, 2016, Nalls was intercepted telling Clark that he was in possession of "purp" and "crack"; on September 10, 2076, Nalls and Mitchell were intercepted discussing the status of various Nine Trey Gangsters members; on September 25, 2016 after Mitchell's arrest, Nalls and Clark conspired to remove all of Mitchell's drugs from Mitchell and Nalls's residence to deter a possible law enforcement investigation of the residence; and on November 11, 2016 Nalls was intercepted discussing his status for an upcoming gang meeting with Riley. [*Id.* at 38-39.] SA Clearly stated that agents determined

---

[3] References to SA Cleary's affidavit supporting the Cell Phone Warrant are to the page numbers automatically generated by CM/ECF.

that he had ceased using his previous telephone number and likely obtained a new number, a tactic that is common among drug dealers and gang members to avoid detection by law enforcement; that Nalls had provided the phone number associated with the Samsung device to DCS twice in September 2017; and that toll records for the telephone indicated that it had been in contact with another alleged gang member on September 28, 2017. (*Id.* at 39-40.)

### III.   DISCUSSION

Nalls first argues that evidence seized pursuant to the Cell-Site Simulator Warrant should be suppressed because the affidavit supporting the application does not establish probable cause. [Doc. 642 at 7.] Nalls further argues that because the Cell Phone Warrant relies on evidence seized as a result of the Cell-Site Simulator Warrant, evidence seized pursuant to that warrant is fruit of the poisonous tree and should be suppressed. [*Id.* at 8.] These arguments are without merit. As discussed in footnote 2 above, the cell-site simulator was supported by SA Cleary's affidavit, but due to an error in the government's Bates-numbering the discovery in this case, an application for a pen register/trap and trace for a different phone appears immediately after the face page of the warrant application. There is no real doubt that SA Cleary's affidavit was, in fact, attached to the warrant application and that

11

the Magistrate Judge who issued the warrant considered it.  Accordingly, Nalls's first argument is without merit.

Next, Nalls argues that SA Cleary's affidavits supporting both warrants contain "misstatements of Mr. Nalls's alleged involvement in gang activities" and that the portions of SA Cleary's summary of Nalls's communications "are not supported by the referenced wiretap intercepts." [Doc. 642 at 8-9.]  He requests that the Court conduct an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). [*Id.* at 9-11.]

There is a presumption of validity with respect to an affidavit supporting a search warrant.  *See Franks*, 438 U.S. at 171 ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.").  "To be entitled to a *Franks* hearing, a defendant must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to a finding of probable cause.'" *United States v. Sarras*, 575 F.3d 1191, 1218 (11th Cir. 2009) (quoting *Franks*, 438 U.S. at 155-56).  As explained by the Eleventh Circuit:

> [T]he substantiality requirement is not lightly met:  To mandate an evidentiary hearing, the [defendant's] attack must be more than

> conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*United States v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006) (citations omitted).

Here, Nalls does not support his motion with a sworn statement or offer of proof alleging facts that suggest SA Cleary included false statements in the search warrant affidavits, much less point to evidence that supports an inference that SA Cleary did so deliberately or in reckless disregard for the truth. Rather, he contends only generally that the intercepted communications do not support SA Cleary's statements, which is wholly insufficient to carry his burden. Nor is the Court persuaded by Nalls's contention in his reply brief that at an evidentiary hearing, he will play recordings of intercepted communications that supposedly contradict SA Cleary's affidavits. [*See* Doc. 837 at 2-3.] Nalls has those recordings (indeed, his counsel states that he has listened to them) and could have provided examples of purported discrepancies in support of his motion. Indeed, the government gave examples of how an intercepted call on September 8, 2016, is consistent with SA Cleary's affidavit. [Doc. 802 at 4.] Since Nalls has failed to make a substantial

13

preliminary showing that SA Cleary deliberately or recklessness included a false statement or failed to include material information in the warrant affidavits, Nalls is not entitled to a *Franks* hearing. *See Arbolaez*, 450 F.3d at 1294 (holding that defendant failed to make substantial preliminary showing required for *Franks* hearing where defendant did not offer a sworn statement alleging that agent knowingly or recklessly included false statements in search warrant affidavit); *see also United States v. Flowers*, 531 F. App'x 975, 981 (11th Cir. 2013) (affirming denial of request for *Franks* hearing where defendant "provided no evidence that established [the affiant] either intentionally or recklessly omitted . . . facts").

## IV. CONCLUSION

For the foregoing reasons, I **RECOMMEND** that Defendant's Motions to Suppress [Docs. 375, 642] be **DENIED**.

I have now addressed all referred pretrial matters relating to Defendant Nalls and have not been advised of any impediments to the scheduling of a trial.[4]

---

[4] Nalls's Motion to Sever Defendant has been referred to the District Judge. [Doc. 535.]

Accordingly, this case is **CERTIFIED READY FOR TRIAL** as to this defendant.[5]

IT IS SO RECOMMENDED this 2nd day of August, 2019.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

[5] Since matters pertaining to Nalls's co-defendants still are pending, the District Court is not required to place his case on the trial calendar at this time. 18 U.S.C. § 3161(h)(6).